John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLC**
280 S. Beverly Drive-Penthouse Suite
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHONITA GANTT, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| EPISOURCE, LLC, | |
| Defendant. | |

Plaintiff CHONITA GANTT ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant EPISOURCE, LLC ("Defendant" or "Episource") and alleges as follows based on personal knowledge as to her own acts and on investigation conducted by counsel as to all other allegations:

## INTRODUCTION

1.     This class action arises out of a recent cyberattack and data breach ("Data Breach") caused by Defendant's failure to implement reasonable and industry standard

-1-
**CLASS ACTION COMPLAINT**

data security practices

2.     Episource is a healthcare technology company that provides software and solutions for risk adjustment and quality programs, primarily serving health plans and medical groups, that "[f]or over a decade [] has been committed to closing gaps in healthcare. Our mission is to continually advance our accuracy, efficiency, and expertise so that we can achieve the best possible outcomes for our clients, their members, and their patients."[1]

3.     Plaintiff brings this Complaint against Defendant for its failure to properly secure and safeguard the sensitive information that it collected and maintained as part of Episource's regular business practices.  Such information included, but was not limited to, individuals' names, addresses, phone numbers, email, dates of birth, and Social Security numbers ("personally identifiable information" or "PII").  It also included health insurance data and health data and other protected health information ("PHI") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[2]

4.     In providing medical care to patients from across the state, Episource collects a significant amount of data – including its patients' PII and PHI  (collectively, "Private Information"). Episource collects, uses, and derives a benefit from its patients' extremely

---

[1] https://www.episource.com/company/ (last accessed June 26, 2025).
[2] https://response.idx.us/episource/ (last visited June 26, 2025).

**CLASS ACTION COMPLAINT**

sensitive Private Information —and it assumes a significant duty to protect that information.

5. Upon information and belief, Episource's clients entrusted it with their patients' sensitive, non-public Private Information, without which Episource could not perform its regular business activities. Episource retains this information for at least many years and even after retention is necessary for ordinary business purposes or regulatory reasons.

6. By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

7. According to the letters dated June 6, 2026 that Episource sent to Plaintiff and other impacted Class Members (the "Notice Letter") on February 6, 2025, Episource "found that unusual activity in [its] computer systems."

8. Plaintiff and Class Members were notified that Episource investigated this breach, and determined that Private Information was accessed between January 27, 2025 and February 6, 2025.[3]

9. Defendant failed to adequately protect Plaintiff's and Class Members' Private

---

[3] *See id.*

**CLASS ACTION COMPLAINT**

Information—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes. By her Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose PII and PHI was accessed during the Data Breach.

10.     In breaching its duties to properly safeguard Private Information and provide timely, adequate notice of the Data Breach's occurrence, Defendant's conduct amounts to negligence and/or recklessness in violation of the law.

11.     Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failures to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents.

12.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain

adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

13.     Plaintiff and Class Members have suffered injuries as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to

-5-
**CLASS ACTION COMPLAINT**

protect the Private Information.

14.     Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

15.     Plaintiff, individually and on behalf of all others similarly situated, brings this Action, seeking to recover damages and non-monetary relief, as well as any other relief this Court may deem just and proper, as a result of Defendant's actions and/or nonactions that led and/or allowed the Data Breach to have occurred.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

17.     This Court has personal jurisdiction over Defendant because it operates and maintains its principal place of business in this District.

-6-
**CLASS ACTION COMPLAINT**

18.    Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant's principal place of business is located in this district and Defendant maintains Class Members' Private Information in this District.

## PARTIES

19.    Plaintiff Chonita Gantt is a resident and citizen of Kansas City, Missouri, where she intends to remain. Plaintiff Gannt is a patient of one of Episource's clients whose information was compromised in the Data Breach.  Plaintiff Gannt received a Notice Letter dated June 6, 2025 from Defendant around June 13, 2025.

20.    Defendant Episource, LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located at 500 West 190th Street, Fourth Floor, Gardena, California, 90248.

## FACTUAL BACKGROUND

### I. Background

21.    Defendant is based in Gardena, California.

22.    Defendant's clients' patients, like Plaintiff and Class members, provided certain PII and PHI to Defendant's clients, which is necessary to obtain and operate Defendant's client's services.

23.    In its business of providing a platform to facilitate the rendering of medical services by their clients to their clients' patients, Episource collects and stores their clients'

-7-

**CLASS ACTION COMPLAINT**

patients' personal information and medical information, including, at a minimum, names, addresses, Social Security numbers, dates of birth, health insurance information, and medical information.

24.    Episource also likely creates and maintains a considerable amount of PHI in the regular course of business. This PHI includes, but is not limited to, billing account numbers, financial information, medical record numbers, dates of service, provider names, and medical and clinical treatment information regarding care received from Episource's clients.

25.    These records were and are stored on Episource networks. Defendant boasts an omnibus Privacy Policy on its website, acknowledging that it "recognize[s] the privacy of your information is important" and as such that it has a policy in place to protect, *inter alia*, "the confidentiality of Social Security numbers."[4]

26.    Plaintiff and the Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information.

## II. The Data Breach

27.    A notice of the Data Breach is linked on Episource's website, and states: "On February 6, 2025, Episource found unusual activity in our computer systems.  We quickly

---

[4] https://www.episource.com/privacy/ (last visited June 26, 2025).

**CLASS ACTION COMPLAINT**

took steps to stop the activity.  We began investigating right away and hired a special team to help us.  We also called law enforcement.  We turned off our computer systems to help protect the customers we work with and their patients and members."[5]

28.     The notice explained that "the data that may have been seen and taken was not the same for everyone and may have included contact information (such as name, address, phone number and email), plus one or more of the following:

- Health insurance data such as health plans/policies, insurance companies, member/group ID numbers, and Medicaid-Medicare-government payor ID numbers;
- Health data such as medical record numbers, doctors, diagnoses, medicines, test results, images, care, and treatment;
- Other personal data such as Social Security number (in limited instances) or date of birth[6]

29.     The Data Breach affected approximately 5,470,000 individuals, including Plaintiff and Class Members, who ultimately entrusted their Private Information to Defendant.[7]

30.     Defendant sent letters to individuals affected, including Plaintiff, on or about June 6, 2025, advising them of "Notice of Data Breach."[8]

31.     Defendant did not state why it was unable to prevent the Data Breach or which security feature(s) failed. Additionally, Defendant did not state 1) how the unauthorized

---

[5] *See supra* fn. 2.
[6] *Id.*
[7] https://www.hipaajournal.com/episource-data-breach/ (last accessed June 26, 2025).
[8] *See supra* fn. **Error! Bookmark not defined.**.

-9-

**CLASS ACTION COMPLAINT**

actors gained access 2) how Defendant failed to detect these intrusions, and 3) how Defendant intends to avoid these types of incidents in the future.[9]

32.    Defendant failed to prevent the Data Breach because it did not adhere to commonly accepted security standards and failed to detect that its databases were subject to a security breach.

### III.    Plaintiff's Experience

33.    The Data Breach caused Plaintiff's Private Information to be compromised by unauthorized third parties. Defendant has not advised Plaintiff specifically which information of hers was accessed, but Plaintiff believes Defendant maintains on its server, at a minimum, her name, date of birth, address, Social Security number, health insurance information and medical information.

34.    Plaintiff is very careful about sharing her sensitive Private Information and diligently maintains her Private Information in a safe and secure manner. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

35.    As a result of the Data Breach, Plaintiff has and will continue to spend time trying to mitigate the consequences of the Data Breach. This includes time spent verifying the legitimacy of communications related to the Data Breach, and self-monitoring her

---

[9] *Id.*

**CLASS ACTION COMPLAINT**

accounts and credit reports to ensure no fraudulent activity has occurred.

36.     Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and has anxiety and increased concerns for the loss of her privacy and due to the substantial number of spam texts, emails and calls she is now receiving due to the Data Breach.

37.     This time has been lost forever and cannot be recaptured. The harm caused to Plaintiff cannot be undone.

38.     Plaintiff further suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

39.     Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of cybercriminals.

40.     Future identity theft monitoring is reasonable and necessary and such services will include future costs and expenses.

41.     Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's control, is protected, and safeguarded from future breaches.

-11-

**CLASS ACTION COMPLAINT**

**IV.     Injuries to Plaintiff and Class Members**

42.     As a direct and proximate result of Defendant's actions and omissions in failing to protect Plaintiff and Class members' Private Information, Plaintiff and Class Members have been injured.

43.     Plaintiff and Class Members have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages, including spending substantial amounts of time monitoring accounts and records, in order to prevent and mitigate credit fraud, identity theft, and financial fraud.

44.     In addition to the irreparable damage that may result from the theft of Private Information, identity theft victims must spend numerous hours and their own money repairing the impacts caused by a breach. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[10]

45.     In addition to fraudulent charges and damage to their credit, Plaintiff and Class Members may spend substantial time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing

---

[10] U.S. Dep't of Justice, *Victims of Identity Theft, 2014* (Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

**CLASS ACTION COMPLAINT**

credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions and changing passwords; (h) freezing and unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

46. Additionally, Plaintiff and Class Members have suffered or are at increased risk of suffering from, inter alia, the loss of the opportunity to control how their Private Information is used, the diminution in the value or use of their Private Information, and the loss of privacy.

**V. Episource Has a Duty to Protect Patients' Private Information**

47. As a company that provides medical coding, risk adjustment services, and software solutions, Episource knew or should have known that protecting its clients' Private Information was of the utmost importance.

48. Defendant could have prevented this Data Breach by properly securing and encrypting the Private Information of Plaintiff and Class members. Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need

-13-
**CLASS ACTION COMPLAINT**

to do so.

49.    Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

50.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

51.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[11]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[12]

52.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private

---

[11] 17 C.F.R. § 248.201 (2013).
[12] *Id.*

**CLASS ACTION COMPLAINT**

Information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

## VI.    The Value of Private Information

53.    It is well known that Private Information is an invaluable commodity and a frequent target of hackers.

54.    People place a high value not only on their Private Information, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[13]

55.    People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[14] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve

---

[13] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.

[14] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.

-15-

**CLASS ACTION COMPLAINT**

all problems . . . and won't guarantee . . . a fresh start."[15]

56.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[16] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[17]  Criminals can also purchase access to entire company data breaches from $900 to $4,500.[18]

57.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills,

---

[15] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.

[16] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[17] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[18] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

**CLASS ACTION COMPLAINT**

it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[19]

58.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse.[20]  In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

59.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[21]

60.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card

---

[19] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf.

[20]  AARP, *Is it possible to get a new Social Security number?,* https://www.aarp.org/retirement/social-security/questions-answers/new-number.html

[21] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

-17-

**CLASS ACTION COMPLAINT**

accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

61.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[22]

62.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

63.     There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[23]

---

[22] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[23] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

-18-

**CLASS ACTION COMPLAINT**

64.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if their data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

65.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.[24]   Plaintiff and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

66.     Defendant knew of the unique type and the significant volume of data contained in the Private Information that Defendant stored on their networks, and, thus, the significant number of individuals who would be harmed by the exposure of the data.

67.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

**VII.     Industry Standards for Data Security**

68.     As explained by the Federal Bureau of Investigation, "[p]revention is the most

---

[24] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

-19-

**CLASS ACTION COMPLAINT**

effective defense against ransomware and it is critical to take precautions for protection."[25]

69.    In light of the numerous high-profile data breaches targeting companies like Yahoo, Facebook, and LinkedIn, Defendant knew of the importance of safeguarding Private Information, as well as of the foreseeable consequences of its systems being breached.[26]

70.    Therefore, the increase in such attacks, and the attendant risk of future attacks, were widely known to the public and to anyone in Defendant's industry, including Defendant.

71.    Security standards commonly accepted among businesses that store Private Information using the internet include, without limitation:

    a.  Maintaining a secure firewall configuration;
    b.  Monitoring for suspicious or irregular traffic to servers;
    c.  Monitoring for suspicious credentials used to access servers;
    d.  Monitoring for suspicious or irregular activity by known users;
    e.  Monitoring for suspicious or unknown users;
    f.  Monitoring for suspicious or irregular server requests;
    g.  Monitoring for server requests for Private Information;
    h.  Monitoring for server requests from VPNs; and
    i.  Monitoring for server requests from Tor exit nodes.

72.    The FTC publishes guides for businesses for cybersecurity[27] and protection of

---

[25] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

[26] Michael Hill and Dan Swinhoe, *The 15 biggest data breaches of the 21st century*, https://www.csoonline.com/article/534628/the-biggest-data-breaches-of-the-21st-century.html

[27] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

**CLASS ACTION COMPLAINT**

Private Information[28] which includes basic security standards applicable to all types of businesses.

      73.    The FTC recommends that businesses:

    a.  Identify all connections to the computers where you store sensitive information.

    b.  Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

    c.  Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

    d.  Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

    e.  Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

    f.  Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

    g.  Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

---

[28] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

**CLASS ACTION COMPLAINT**

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

74. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[29]

75. Because Plaintiff and Class Members entrusted Defendant with Private Information, Defendant had a duty to keep the Private Information secure.

76. Plaintiff and Class Members reasonably expect that when their Private Information is provided to a sophisticated business for a specific purpose, that business will safeguard their Private Information and use it only for that purpose.

77. Nonetheless, Defendant failed to prevent the Data Breach. Had Defendant properly maintained and adequately protected its systems, it could have prevented the Data

---

[29] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

**CLASS ACTION COMPLAINT**

Breach.

## VIII.    HIPAA Standards and Violations

78.    In addition to failing to follow universal data security practices, Defendant failed to follow healthcare industry standard security practices, including:

    a. Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. 164.306(a)(2);

    b. Failing to ensure compliance with HIPAA security standards by its workforce or agents in violation of 45 C.F.R 164.306(a)(94);

    c. Failing to effectively train all members of its workforce and its agents on the policies and procedures with respect to PHI as necessary to maintain the security of PHI in violation of C.F.R. 164.530(b) and 45 C.F.R. 164.308(a)(5); and

    d. Failing to design and implement and enforce policies and procedures to establish administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. 164.530(c).

79.    Episource is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[30] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

80.    HIPAA's Security Rule requires Episource to do the following:

    a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

---

[30] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

-23-

**CLASS ACTION COMPLAINT**

d.  Ensure compliance by its workforce.

81.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Episource to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[31]

## CLASS ALLEGATIONS

82.    Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following Class:

> All persons whose PII was maintained on Defendant's servers and was compromised in the Data Breach.

83.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

84.    Plaintiff reserves the right to amend the class definition.

85.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same

---

[31] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html.

-24-

**CLASS ACTION COMPLAINT**

evidence as would be used to prove those elements in individual actions asserting the same claims.

86.    <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified Class Members and sent them data breach notices.

87.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes millions of members.[32]

88.    <u>Typicality</u>. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

89.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel that are experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

90.    <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all

---

[32] *See* fn. 7.

-25-
**CLASS ACTION COMPLAINT**

Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

     a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class Members' PII/PHI;

     b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

     c. if Defendant was negligent in maintaining, protecting, and securing PII/PHI;

     d. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

     e. if Defendant's Breach Notice was reasonable;

     f. if the Data Breach caused Plaintiff and the Class injuries;

     g. what the proper damages measure is; and

     h. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

91. <u>Superiority</u>. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides

**CLASS ACTION COMPLAINT**

comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

92. Plaintiff repeats, re-alleges, and incorporates by reference, paragraphs 1 through 91 of this complaint.

93. Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of providing services to its clients soliciting its services, which services affect commerce.

94. Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

95. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

96. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its servers—and Class Members' Private Information held within them—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement

-27-

**CLASS ACTION COMPLAINT**

processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

97. Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

98. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

99. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

100. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients. That special

-28-

**CLASS ACTION COMPLAINT**

relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of being patients of Defendant's clients.

101.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

102.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

103.    Defendant also had a duty to exercise appropriate practices to remove former patients' Private Information once it was no longer required to retain pursuant to regulations.

104.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

105.    Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions

**CLASS ACTION COMPLAINT**

committed by Defendant include, but are not limited to, the following:

    a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b. Failing to adequately monitor the security of its networks and systems;

    c. Failing to periodically ensure that its email system had reasonable data security safeguards;

    d. Allowing unauthorized access to Class Members' Private Information;

    e. Failing to detect in a timely manner that Class Members' Private Information had been compromised;

    f. Failing to remove former patients' Private Information it was no longer required to retain pursuant to regulations,

    g. Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

    h. Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

106. Defendant violated Section 5 of the FTC Act and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

107. Plaintiff and the Class are within the class of persons that the FTC Act and HIPAA were intended to protect.

108. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

-30-

**CLASS ACTION COMPLAINT**

109.  Defendant's violation of Section 5 of the FTC Act and HIPAA constitutes negligence.

110.  The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

111.  A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

112.  It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

113.  Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

114.  Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the

**CLASS ACTION COMPLAINT**

necessity for encrypting Private Information stored on Defendant's systems.

115.   It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

116.   Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

117.   Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

118.   Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

119.   Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

120.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiff

-32-

**CLASS ACTION COMPLAINT**

and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

121.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

122.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to

**CLASS ACTION COMPLAINT**

undertake appropriate and adequate measures to protect the Private Information.

123.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

124.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

125.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

126.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner.

127.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**CLASS ACTION COMPLAINT**

## SECOND CAUSE OF ACTION
### NEGLIGENCE PER SE
**(On Behalf of Plaintiff and the Class)**

128.    Plaintiff repeats, re-alleges, and incorporates by reference, paragraphs 1 through 91 of this complaint.

129.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

130.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

131.    Defendant violated Section 5 of the FTC Act, HIPAA, and similar state statutes by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

-35-

**CLASS ACTION COMPLAINT**

132.    For instance, HIPAA required Defendant to notify victims of the Breach within 60 days of the discovery of the Data Breach. However, despite learning of the breach no later than February 6, 2025, Defendant did not notify affected victims in any manner until at earliest April 23, 2025 – and in most cases, not until June 6, 2025.

133.    Defendant's violation of Section 5 of the FTC Act, HIPAA, and similar state statutes constitutes negligence *per se*.

134.    Class Members are consumers within the class of persons Section 5 of the FTC Act, HIPAA, and similar state statutes were intended to protect.

135.    Moreover, the harm that has occurred is the type of harm the FTC Act, HIPAA, and similar state statutes were intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

136.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the

**CLASS ACTION COMPLAINT**

Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

137.   Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for judgment against Defendants as follows:

a.   For an order certifying the Class, appointing Plaintiff as Class Representative, and appointing the law firms representing Plaintiff as counsel for the Class.

b.   For compensatory, punitive, statutory, and treble damages in an amount to be determined at trial.

c.   Payment of costs and expenses of suit herein incurred.

d.   Both pre-and post-judgment interest on any amounts awarded.

e.   Payment of reasonable attorneys' fees and expert fees.

f.   Such other and further relief as the Court may deem proper.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of

-37-

**CLASS ACTION COMPLAINT**

America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

Dated: June 30, 2025                Respectfully submitted,


                                    By: */s/John J. Nelson*
                                    John J. Nelson (SBN 317598)
                                    **MILBERG COLEMAN BRYSON**
                                    **PHILLIPS GROSSMAN, LLC**
                                    280 S. Beverly Drive-Penthouse Suite
                                    Beverly Hills, CA 90212
                                    Telephone: (858) 209-6941
                                    Email: jnelson@milberg.com

                                    Jeffrey S. Goldenberg *
                                    **GOLDENBERG SCHNEIDER, LPA**
                                    4445 Lake Forest Drive, Suite 490
                                    Cincinnati, OH 45242
                                    Tel: (513) 345-8291
                                    jgoldenberg@gs-legal.com

                                    Brett R. Cohen (SBN 337543)
                                    **LEEDS BROWN LAW, P.C.**
                                    One Old Country Road, Suite 347
                                    Carle Place, NY 11514-1851
                                    Tel: (516) 873-9550
                                    bcohen@leedsbrownlaw.com

                                    Charles E. Schaffer*
                                    **LEVIN SEDRAN & BERMAN LLP**
                                    510 Walnut Street, Suite 500
                                    Philadelphia, PA 19106
                                    Tel: (215) 592-1500
                                    cschaffer@lfsblaw.com

                                    *Counsel for Plaintiff and Proposed Class*
                                    *pro hac vice forthcoming

-38-

**CLASS ACTION COMPLAINT**